1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

KATHERINE M.,

Plaintiff,

CASE NO. C20-6023-MAT

10

v.

11

COMMISSIONER OF SOCIAL SECURITY,

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

12

Defendant.

13

14      Plaintiff appeals a final decision of the Commissioner of the Social Security Administration

15  (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) after a

16  hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the

17  administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

18                          **FACTS AND PROCEDURAL HISTORY**

19      Plaintiff was born on XXXX, 1973.[1] Plaintiff has at least a high school education and has

20  no past relevant work. AR 29. Plaintiff filed an application for Disability Insurance Benefits (DIB)

21  and an application for SSI on July 31, 2018, alleging disability beginning March 1, 2008. AR 15.

22  The applications were denied at the initial level and on reconsideration. On September 24, 2019,

23

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

the ALJ held a hearing that was postponed so that Plaintiff could obtain representation. AR 37–48. On January 30, 2020, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). AR 49–100. At the hearing, Plaintiff amended the alleged onset date of disability to July 31, 2018. AR 15. As a result of the amended alleged onset date, Plaintiff voluntarily elected to withdraw her request for a hearing regarding her DIB claim, and the ALJ found that Plaintiff was not entitled to a period of disability and disability insurance under Title II of the Social Security Act. AR 16.

On March 2, 2020, the ALJ issued a decision finding Plaintiff not disabled. AR 15–31. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on August 12, 2020 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 18.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairments: left foot plantar fasciitis; major depressive disorder; and post-traumatic stress disorder (PTSD). AR 18. The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: right tennis elbow; bilateral knee pain; neck pain; dysmenorrhea; fatty liver; colon polyps; hemorrhoids; pelvic floor dysfunction; cystocele; rectocele; vaginal prolapse; high cholesterol; high triglycerides; headaches; right ear otitis media; obesity; and history of methamphetamine abuse in sustained full remission. AR 18–20.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 20–22.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> She can occasionally crawl and climb ladders, ropes, or scaffolds. She can have occasional exposure to vibration and extreme cold temperatures. She can understand, remember, and apply short, simple instructions. She can perform routine, predictable tasks. She can work in an environment free of fast-paced production demands.

1
2

> She can make simple decisions. She can be exposed to occasional,
> routine workplace changes. She can have occasional interaction
> with co-workers and the general public.

3  AR 22.

4      If a claimant demonstrates an inability to perform past relevant work, or has no past

5  relevant work as here, the burden shifts to the Commissioner to demonstrate at step five that the

6  claimant retains the capacity to make an adjustment to work that exists in significant levels in the

7  national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing

8  other jobs, such as work as cleaner, housekeeping; marker; and small products assembler. AR 29–

9  30.

10      Plaintiff raises the following issues on appeal: (1) Whether the ALJ properly evaluated the

11  medical evidence; (2) whether the ALJ properly evaluated Plaintiff's testimony; (3) whether the

12  ALJ properly evaluated the lay evidence; (4) whether the ALJ properly assessed Plaintiff's RFC

13  and erred by basing his step five finding on an erroneous RFC assessment; and (5) whether the

14  ALJ was not validly appointed because he derived his authority from a Commissioner who was

15  appointed in violation of the Constitution. Plaintiff requests remand for further administrative

16  proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence

17  and should be affirmed.

18  **1.  Medical Opinions**

19      The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the

20  ALJ finds medical opinions and to explain how the ALJ considered the supportability and

21  consistency factors.[2] 20 C.F.R. § 416.920c(a)–(b). The regulations require an ALJ to specifically

22

23

[2] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at § 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Zhu v. Comm'r of Soc. Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the 2017 regulations). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A.  Dr. Terilee Wingate, Ph.D.

On July 10, 2018, Dr. Wingate assessed Plaintiff with marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks, maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 415. Dr. Wingate further assessed Plaintiff with moderate limitations in her ability to understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; ask simple questions or request assistance; communicate and perform effectively in a work setting; and set realistic goals and plan independently. AR 415.

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. § 416.920c(a)–(b). The ALJ found Dr. Wingate's opinion partially persuasive finding

ORDER
PAGE - 5

that the doctor's "opinion regarding the claimant's marked limitation is not consistent with the claimant's lack of treatment at the time of the evaluation," that Plaintiff's "symptoms improved with medications and minimal engagement in counseling," and that the marked limitations are "not consistent with the claimant's ability to serve as the sole caregiver for her mother at home and handle all the household responsibilities." AR 27.

Plaintiff argues that the ALJ's rejection of Dr. Wingate's marked limitations are not supported by substantial evidence. Dkt. 22, at 4. Specifically, Plaintiff argues that "the fact that [Plaintiff] was not receiving treatment at that time is not a legitimate reason to reject Dr. Wingate's opinion, which was based on her clinical findings." *Id.* An ALJ may discount a medical opinion based on a claimant's lack of treatment. *Blacksher v. Berryhill*, 762 Fed. Appx. 372, 374 (9th Cir. 2019) (holding that the ALJ properly discounted a treating psychologist's opinion due to the claimant's "gaps in treatment"); *Evans v. Berryhill*, 759 Fed. Appx. 606, 608 (9th Cir. 2019) (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition"). Here, the ALJ found that Plaintiff "attended only a few therapy sessions at Sea Mar Behavior Health during the relevant period" and that, in June 2019, she was discharged from the clinic "because she plateaued in treatment and was unable to clarify goals for treatment." AR 23; *see* AR 1005. The discharge notes further reported that Plaintiff's "[a]ssigned therapist has concluded that [Plaintiff] is at baseline functioning and continued psychotherapy will not be of benefit" and that Plaintiff "does not meet medical necessity for mental health services, including psychotherapy." AR 1005. Therefore, substantial evidence supports the ALJ's finding, and Plaintiff has not shown that the ALJ erred in by discounting Dr. Wingate's assessment of marked limitations by finding it inconsistent with evidence of Plaintiff's lack of treatment.

Plaintiff next argues that "subsequent medical records do not show substantial improvement." Dkt. 22, at 4. An ALJ may consider improvement with treatment in discounting a medical opinion. *Thomas*, 278 F.3d at 957. The ALJ found that "[s]ubsequent medical evidence shows that [Plaintiff's] symptoms improved with medications and minimal engagement in counseling." AR 27; *see also* AR 26. The ALJ further found that, when Plaintiff was discharged from Sea Mar Behavior Health in 2019, "the discharge note reported that the claimant's mental health needs could be effectively met using informal supports and medication management." AR 23. Plaintiff's medical records in 2019 reported that Plaintiff endorsed never having taken medication as described and that Plaintiff "has had a history of mental health therapy, had found it helpful in the past and is not connected currently." AR 957, 972. Plaintiff thereafter was assessed for medication management. AR 957, 972. Plaintiff's medical records further found that Plaintiff's needs regarding her "symptoms of anxiety and depression . . . can be effectively met using informal supports and pursuing medication only treatment." AR 1006; *see Deck v. Colvin*, 588 Fed. Appx. 747, 748 (9th Cir. 2014) (ALJ properly accorded less weight to opinions of examining physicians who noted plaintiff's symptoms would improve with engagement in treatment and ceasing the abuse of substances). Therefore, the ALJ's finding is supported by substantial evidence, and Plaintiff has not shown that the ALJ erred by discounting Dr. Wingate's assessment of marked limitations by finding that the evidence showed Plaintiff's symptoms improving with medication.

Finally, Plaintiff argues that "the fact that [Plaintiff] was the primary caregiver for her mother when her mother was dying is not a legitimate reason to reject any of Dr. Wingate's findings." Dkt. 22, at 4. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ

found that Plaintiff "was the sole caregiver for her elderly mother throughout the relevant period up until her passing in June 2019" and that Plaintiff's "responsibilities included cooking and handling all the household responsibilities." AR 21. The ALJ found that Plaintiff's responsibilities in caregiving for her mother were inconsistent with Dr. Wingate's assessment that Plaintiff had "marked limitations with performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances without special supervision, and completing a normal workday/workweek without interruptions from psychologically based symptoms." AR 27. Plaintiff reported that, when she was the caregiver for her mother, she went grocery shopping, cared for animals, did all the cooking, cleaning, and laundry, that she redid the dishes after her mother did them, that she is "very picky about things being clean," and that she did gardening. AR 414. Therefore, the ALJ's finding is supported by substantial evidence, and Plaintiff has not shown that the ALJ erred by discounting Dr. Wingate's assessment of marked limitations by finding it inconsistent with Plaintiff's level of activity.

B.  Dr. Daria Sciarrone, M.D.

On October 20, 2018, Dr. Sciarrone examined Plaintiff and diagnosed Plaintiff with left plantar fasciitis, and, regarding her knees, chondromalacia patellae and possibly some residual issues status post injury in 1993 with the right leg regarding her knees. AR 797. Dr. Sciarrone noted that Plaintiff was tender in her liver area but recommended further evaluation. AR 797. Similarly, Dr. Sciarrone noted Plaintiff's pelvic pain/dysmenorrhea but did not identify a diagnosis. AR 797. Dr. Sciarrone assessed that Plaintiff "may walk to least two hours, but may need to have a break to ice her feet," can probably climb a little more than two hours, if she is allowed to rest," can balance on the right foot, and is partially limited in stooping and kneeling due to her knees and her abdominal liver issue. AR 798. Dr. Sciarrone further opined that, although

she was unable "to assess exactly what is going on with her abdominal pathology," in order "to avoid any intra-abdominal trauma," Plaintiff "would probably be able to lift 50 pounds occasionally and 25 pounds frequently" but that those capacities "probably would involve movements around the same level rather than bending and flexing and extending . . . because of the fact that she may have distention and irritation of the liver with said movement." AR 798. Dr. Sciarrone further noted that she was unable to assess Plaintiff's ability to crouch and crawl because of the issues with Plaintiff's abdomen. AR 798.

The ALJ found Dr. Sciarrone's opinion not persuasive. AR 27. The ALJ found that the doctor's "opinion is internally inconsistent and confusing." AR 27. In relevant part, the ALJ noted that Dr. Sciarrone's opinion was inconsistent with the overall medical evidence, that the doctor "assessed significant physical limitations while speculating regarding the seriousness of the claimant's liver, knee, and gynecological conditions," that Plaintiff received none to minimal treatment for these conditions during the relevant period, that Plaintiff "ambulated with unremarkable gait throughout the record," and that the doctor's assessment of significant physical limitations "is not consistent with claimant's conservative, minimal treatment history for pain, as well as her ability to serve as her elderly mother's sole caregiver." AR 27–28.

Plaintiff concedes that Dr. Sciarrone's opinion "is indeed not fully consistent with her findings" but argues that "the ALJ erred by failing to credit the consistent part of her opinion." Dkt. 22, at 6. An ALJ appropriately considers internal inconsistencies within a medical opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Further, the ALJ must assess the supportability of a physician's opinion. *See* 20 C.F.R § 416.920c(c)(1) (under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support this or her medical opinion(s) . . . the

more persuasive the medical opinions . . . will be."). Plaintiff does not challenge the ALJ's finding that Dr. Sciarrone's opinion contained internal inconsistencies, and Plaintiff does not specify what clinical findings were consistent with Dr. Sciarrone's opinion that the ALJ otherwise failed to credit. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity); *see also Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) (the court "review[s] only issues which are argued specifically and distinctly in a party's opening brief"). Therefore, Plaintiff has not shown that the ALJ erred by finding Dr. Sciarrone's opinion unpersuasive by considering the internal inconsistencies in the doctor's opinion.

Plaintiff next argues that the ALJ improperly found that, because Plaintiff received none to minimal treatment for her liver, knee, and gynecological conditions, "[as such, these conditions did not impose any functional limitations."[3] Dkt. 22, at 6 (citing AR 27). The ALJ found Dr. Sciarrone "assessed significant physical limitations while speculating regarding the seriousness of the claimant's liver, knee, and gynecological conditions." AR 27. An ALJ may properly reject an opinion that is conclusory and inconsistent with the record. *See Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Here, Dr. Sciarrone assessed functional limitations regarding Plaintiff's ability to bend, flex, extend, kneel, crouch, and crawl even though the doctor reported being unable "to assess exactly what is going on with her abdominal pathology," specifically regarding Plaintiff's liver. AR 798. The doctor noted that "if there is any issue with her liver per se, I would wish to avoid any intra-abdominal trauma." AR 798. Further, the ALJ found that the evidence shows that Plaintiff's fatty liver, colon polyps,

---

[3] To the extent that Plaintiff challenges here the ALJ's assessed RFC and consideration of Plaintiff's liver, knee, and gynecological conditions, this argument is addressed in Section 4 below.

and hemorrhoids were benign and that the evidence shows that Plaintiff's pelvic floor dysfunction, cystocele, rectocele, and vaginal prolapse markedly improved with physical therapy. AR 19. The ALJ's findings were supported by substantial evidence, and Plaintiff has not shown that the ALJ erred by discounting Dr. Sciarrone's opinion by finding her assessment of limitations speculative and inconsistent with the overall medical record.

Finally, Plaintiff argues that "the fact that [Plaintiff] took care of her mother when her mother was dying proves nothing about her functional abilities since July 2018." Dkt. 22, at 6. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. Although Plaintiff asserts in the Opening Brief that Plaintiff's mother passed away in June 2018 (Dkt. 22, at 6, 9), the records indicate that Plaintiff was caring for her mother through June 2019, when Plaintiff reported to treatment providers that her mother passed away. AR 413, 753, 1048, 1068; *see also* AR 292 (identifying caring for her mother in Plaintiff's Function Report). Therefore, the ALJ properly considered Plaintiff's caregiving activities during the relevant period. As described above, Plaintiff's activities in caregiving for her mother included grocery shopping, cooking, laundry, cleaning, and dishwashing. AR 21, 414. The ALJ found these activities to be inconsistent with Dr. Sciarrone's assessment of significant physical limitations (AR 28), and the ALJ's finding is supported by substantial evidence. Therefore, Plaintiff has not shown that the ALJ erred by discounting Dr. Sciarrone's assessed physical limitations by finding it inconsistent with Plaintiff's level of activity.

C.  Other Medical Evidence

Plaintiff cites to treatment notes from LaDonna Robey, MS, ARNP, Donna Elam, PA-C, and Cecilia Christensen, PAC, and asserts that "all of this evidence provides further support for Dr. Wingate's opinion and [Plaintiff's] testimony." Dkt. 22, at 7. Plaintiff, however, does not

ORDER
PAGE - 11

assign specific error to the ALJ's consideration of the evidence, nor does Plaintiff identify any conflicts in the record that the ALJ failed to resolve. *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity); *Greenwood,* 28 F.3d at 977 ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim. . . ."); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (it is the ALJ's responsibility to resolve conflicts in the medical evidence). Further, none of the treatment notes cited by Plaintiff state a specific opinion regarding Plaintiff's functional limitations. "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ does not need to provide clear and convincing reasons for rejecting a medical opinion that does not identify any specific limitations or conflict with the ALJ's RFC determination). Therefore, the evidence cited by Plaintiff does not show error in the ALJ's consideration of the medical evidence in the record.

D. <u>Non-Examining Opinions</u>

Plaintiff argues that the ALJ erred by rejecting the November 2, 2018 opinion of Dr. Desmond Tuason, M.D., and the January 20, 2019 opinion of Dr. Debra Baylor, M.D. Dkt. 22, at 28. Plaintiff asserts that "the fact that [Plaintiff] received minimal treatment does not justify the ALJ's rejection of these opinions, which were based largely on Dr. Sciarrone's clinical findings." *Id.* (citing AR 28). Under the Social Security regulations, "[a]lthough adjudicators . . . are not required to adopt prior administrative medical findings when issuing decisions, adjudicators must consider them and articulate how they considered them in the decision." SSR 17-2p. The ALJ found the opinions of Drs. Tuason and Baylor partially persuasive finding that "their opinions

regarding the claimant's standing/walking limitations are not consistent with the claimant's minimal treatment for left plantar fasciitis and no treatment for knee pain." AR 28; *see also* AR 25 (finding that Plaintiff's minimal treatment for her left foot/heel pain "greatly indicates that Plaintiff's condition was management effectively with only marijuana and insoles"). As discussed above, the ALJ may discount a medical opinion based on a claimant's lack of treatment. *Blacksher*, 762 Fed. Appx. at 374 (holding that the ALJ properly discounted a treating psychologist's opinion due to the claimant's "gaps in treatment"); *Evans*, 759 Fed. Appx. at 608 (affirming an ALJ's rejection of a treating physician's opinion in part because plaintiff "received only sporadic treatment for his condition"). Further, impairments that can be controlled effectively with treatment are not disabling for the purpose of determining disability benefits. *See also Warre ex rel. E.T. IV v. Comm' r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Therefore, Plaintiff has not shown that the ALJ erred by discounting Drs. Tuason and Baylor's standing/walking limitations by finding that Plaintiff received minimal to no treatment for her left plantar fasciitis and no treatment for knee pain.

Plaintiff next argues that the ALJ erred by finding persuasive the opinions of state agency consultants Dr. John Robinson, Ph.D., and Dr. Steven Haney, M.D. Dkt. 22, at 7. Plaintiff asserts that "to the extent that these opinions are inconsistent with Dr. Wingate's findings, these opinions lack supportability and consistency, and they are entitled to little if any weight." *Id.* Under the 2017 regulations, the ALJ no longer weighs medical opinions; rather, the ALJ determines which opinions are most "persuasive" without giving any controlling weight to any medical opinion, including treating and evaluating physicians. 20 C.F.R. § 416.920c(a)–(b). Therefore, the ALJ properly evaluated the persuasiveness of the state agency consultants' medical opinions according to the new regulations without giving controlling weight to any opinion.

### 2. Subjective Testimony

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[4] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that she is unable to work because she cannot be around people, that it is hard to get out of bed, that she feels like the universe is out to get her and everyone would be better off if she were gone, that her foot hurts so much when she wakes up that it is hard to get to the bathroom and she just cries the entire time, that her whole body is giving up on her and she just wants to die, that she is losing friends, and that she cannot socialize anymore. AR 291. Plaintiff further alleges that her conditions limit her ability to squat, bend, kneel, and see, and affects her memory and her ability to complete tasks, concentrate, and get along with others. AR 296. At the hearing, Plaintiff testified that she cannot stand up for very long without pain, that, during a typical day, she cries her eyes out and experiences pain, and that she can sit and stand for about 15 to 20

---

[4] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

minutes before needing to get up and can walk for about half a block. AR 71–72, 75, 77, 85, 87. The ALJ found that Plaintiff's "severe medically determinable impairments could reasonably be expected to cause some of the claimant alleged symptoms," but that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." AR 23.

Plaintiff argues that the ALJ improperly applied the objective evidence test, asserting that the ALJ could not reject Plaintiff's "testimony about the extent or severity of her symptoms and limitations based solely upon whether objective evidence supports the degree of limitations alleged by [Plaintiff]." Dkt. 22, at 9. As described above, while an ALJ may not reject subjective testimony merely because it lacks support in the medical evidence, the ALJ may discount subjective testimony where it is contradicted by the medical evidence. *See Carmickle*, 533 F.3d at 1161. Indeed, "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 16-3p. Here, the ALJ rejected Plaintiff's symptom testimony based on inconsistencies with the medical record and not based on lack of support in the record. The ALJ found that Plaintiff's testimony of "debilitating mental health symptoms, which greatly impacted her memory and concentration" and Plaintiff's testimony that "she is unable to handle most of the household responsibilities due to pain and fluctuations in her mood" were inconsistent with evidence of Plaintiff serving as a sole caregiver for her mother until her passing and performing responsibilities that included cooking and performing all household tasks. AR 26. Therefore, the ALJ properly evaluated Plaintiff's symptoms testimony and gave specific, clear, and convincing reasons for discounting Plaintiff's testimony regarding her mental health symptoms and pain by finding it inconsistent with the medical evidence.

Plaintiff next argues that the ALJ improperly rejected Plaintiff's testimony about her symptoms and limitations by finding that "[t]he record strongly suggests that the claimant has not been working for reasons unrelated to her claimed disability." Dkt. 22, at 9 (citing AR 26). An ALJ may consider whether a claimant stopped working for some reason other than the alleged disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, Plaintiff reported that she stopped looking for work because she is taking care of her mother and that she stopped applying for jobs due to multiple rejections. AR 413, 432. Therefore, the ALJ's finding was supported by substantial evidence, and the ALJ gave a specific, clear, and convincing reason for rejecting Plaintiff's subjective testimony by finding that Plaintiff stopped working for reasons other than her alleged disability.

Finally, Plaintiff argues that the ALJ erred by finding that the medical evidence "shows that the claimant demonstrates a level of functioning in excess of her claimed limitations," asserting that Plaintiff's ability to care for her mother until she passed away "says nothing about her ability to function since July 2018. Dkt. 22, at 9 (citing AR 26). As described in the previous section, the records indicate that Plaintiff was caring for her mother through June 2019, when Plaintiff reported to treatment providers that her mother passed away. AR 413, 753, 1048, 1068; *see also* AR 292 (identifying caring for her mother in Plaintiff's Function Report). Therefore, the ALJ properly considered Plaintiff's caregiving activities during the relevant period. The ALJ found Plaintiff's alleged symptoms inconsistent with evidence of Plaintiff performing sole caregiving activities for her mother, which included grocery shopping, cooking, laundry, cleaning, and dishwashing. AR 21, 414. The ALJ's finding is supported by substantial evidence, and Plaintiff has not shown that the ALJ erred by finding Plaintiff's testimony of debilitating mental health symptoms and her inability to complete household tasks inconsistent with evidence of Plaintiff's

activities during the relevant period. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling pain." (emphasis in original)); *see also Morgan*, 169 F.3d at 600 (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

Finally, Plaintiff summarizes Plaintiff's symptom testimony, which Plaintiff asserts the ALJ improperly rejected. Dkt. 22, at 10–14. In determining disability, the ALJ "consider[s] all [the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R § 416.929(a). Here, as described above, the ALJ gave valid reasons for discounting Plaintiff's subjective testimony about the severity of her mental health symptoms and inability to perform household activities by finding it inconsistent with the medical evidence and Plaintiff's level of activity. Because Plaintiff has not shown that the ALJ improperly rejected Plaintiff's testimony, Plaintiff's recitation of Plaintiff's testimony does not deprive the ALJ's decision of substantial evidence.

### 3. Lay Witness Testimony

Plaintiff argues that the ALJ failed to properly evaluate the law witness testimony of Plaintiff's boyfriend. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In a written statement, Plaintiff's boyfriend described that Plaintiff cannot sit still, has

abnormal balance, is constantly crying hysterically, talks to herself, spends most of her time in bed, cannot finish simple tasks, limps around the house, is constantly complaining and saying that she wants to die, cannot sit in a chair for 10 minutes without having to lay down, tosses and turns at night, drops things on a daily basis, has become weaker over the years and cannot do normal tasks, that her fingers and wrists pop and snap, that she cannot stand long enough to do dishes, that she is argumentative, impatient, extremely difficult, and verbally abusive, and that she cannot remember anything unless it is written down. AR 368–72. The ALJ stated that he considered Plaintiff's boyfriend's "statements in assessing the claimant's claims." AR 29.

Plaintiff argues that the ALJ failed to include in his RFC all of the limitations described by Plaintiff's boyfriend. Dkt. 22, at 15. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Here, although the ALJ did not expressly determine to disregard Plaintiff's boyfriend's statement, *see Lewis*, 236 F.3d at 511, the ALJ did not include limitations described by Plaintiff's boyfriend, such as those regarding Plaintiff's mental health symptoms and her ability to sit, stand, balance, and complete tasks. Therefore, the ALJ did not properly reject the limitations described by the lay witness statement.

Nevertheless, the ALJ's error in properly addressing the limitations described by Plaintiff's boyfriend is harmless because it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted), *superseded by regulation on other grounds*. Here, the ALJ reasonably credited more reliable medical evidence that contradicted the lay witness statement. *See Baker v. Berryhill*, 720 Fed. Appx. 352, 357 (9th Cir. 2017) (an ALJ's error in properly addressing lay witness testimony harmless where "[t]he ALJ credited more reliable medical evidence that contradicted this lay witness opinion"); *see also*

ORDER
PAGE - 18

*Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency between a lay statement and the medical record constitutes specific and germane reasons for discrediting lay testimony). Regarding Plaintiff's physical limitations, the ALJ credited Drs. Tuason and Baylor's opinions that Plaintiff can frequently balance and can sit for six hours in an eight-hour work day (AR 28) and Dr. Robinson's opinion that Plaintiff can complete simple tasks (AR 28). Regarding Plaintiff's mental health symptoms, the ALJ found that the evidence showed that "her conditions actually improved with medication." AR 26–27. Regarding Plaintiff's sitting and standing limitations, Plaintiff's boyfriend's statements are substantially similar to those alleged by Plaintiff, which, as described above, the ALJ validly rejected. *See Molina*, 674 F.3d at 1115 ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony . . . ."). Therefore, any error in the ALJ's consideration of Plaintiff's boyfriend's statement is harmless.

### 4.  RFC and VE Hypothetical

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. *See* 20 C.F.R. § 416.945; SSR 96-8p. The RFC is the most a claimant can do considering his limitations or restrictions. *See* SSR 96-8p. The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 416.945(e); SSR 96-8p. Plaintiff argues that the ALJ improperly determined Plaintiff's RFC and in posing the hypothetical to the VE because the RFC does not include all of the limitations assessed by Drs. Wingate and Sciarrone or the limitations described by Plaintiff or Plaintiff's boyfriend. Dkt. 22, at 15. Specifically, Plaintiff argues that the RFC failed to include that Plaintiff "is unable to perform any type of full-time work

on a sustained basis without requiring extra breaks and excessive absences, and without crying throughout her work shift." *Id.*

As described in the previous sections, the ALJ properly considered Drs. Wingate and Sciarrone's opinions and Plaintiff's symptom testimony. Substantial evidence supports the ALJ's rejection of Drs. Wingate and Sciarrone's assessed limitations as well as Plaintiff's testimony regarding the severity of her limitations, which the ALJ found to be inconsistent with or contradicted by the medical evidence. *See* Sections 2–3, *supra.* Further, any error in addressing the lay witness statement was harmless in light of the ALJ's crediting more reliable evidence that contradicted the limitations described by the lay witness. *See* Section 4, *supra*. Limitations from properly discounted evidence does not need to be included in the RFC or the VE hypothetical. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009); *Bayliss*, 427 F.3d at 1217–18. Therefore, Plaintiff has not shown that the ALJ erred in assessing the RFC or in posing the hypothetical to the VE.

**5. Separation of Powers**

Plaintiff argues that ALJ's decision denying Plaintiff's claim was constitutionally defective because the Section 902(a)(3) of the Social Security Act, which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers. Dkt. 22, at 16–19. Plaintiff argues that the ALJ's decision should be remanded for a new hearing before a different ALJ based on this constitutional defect. *Id.* at 19. The Commissioner does not dispute that Section 902(a)(3) is constitutionally defective; however, the Commissioner asserts that the constitutional defect does not support setting aside the ALJ's denial of benefits. Dkt. 26, at 2.

Under *Collins v. Yellen*, 141 S. Ct. 1761 (2021), a plaintiff seeking relief based on the existence of an unconstitutional statutory removal restriction must show harm in order to be

entitled to such relief. *Id.* at 1787–89; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions."). In *Collins*, the Supreme Court noted that "it is still possible for an unconstitutional provision to inflict compensable harm"; however, the Supreme Court remanded the matter to the lower trial court for a determination in the first instance as to whether the party alleging constitutional error suffered "compensable harm." *Collins*, 141 S. Ct. at 1789. Notably, the Supreme Court did not provide administrative relief or remand to the agency based on the existence of an unconstitutional removal provision within the underlying statutory scheme absent a finding from the trial court of harm. *Id.* Here, because the Court is making a determination regarding an alleged constitutional error in the first instance, Plaintiff must show that she suffered harm from the error in order to be entitled to a remedy from this Court.

Plaintiff argues that, due to the unconstitutional removal provision, "the Commissioner had no authority to delegate authority, leaving the ALJ here without any authority to make findings of fact and issue final decisions as to benefits eligibility." Dkt. 22, at 17; *see also* Dkt. 27, at 9 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)). Plaintiff argues in her Reply Brief that "[t]he primary harm to [Plaintiff] lies in the fact that the decision in this case was made and reviewed with Saul's own authority, protected by §902(a)(3), not the President's authority, making the disability determination null." Dkt. 27, at 9.[5] Plaintiff's argument, however, has been rejected by the

---

[5] Plaintiff cites *Tafoya v. Kijakazi*, 2021 WL 3269640 (D. Colo. July 29, 2021) for support of her contention. Dkt. 27, at 9. *Tafoya*, however, is inapposite. In *Tafoya*, the United States District Court for the District of Colorado addressed whether the plaintiff had standing to raise a separation of powers claim and did not reach a decision whether the plaintiff therein was entitled to a remedy based on the alleged constitutional violation. 2021 WL 3269640, at *1–5. Further, although courts may look to other district court decision as persuasive authority, decisions from other circuits and other district courts are not binding on this court. *See Gunther v. Washington Cty.*, 623 F.2d 1303, 1319 (9th Cir. 1979) ("Although we look to the reasoning of other circuits and district courts for guidance, we are bound only by the decisions rendered in this circuit.").

ORDER
PAGE - 21

Supreme Court. In *Collins*, the Supreme Court held that the existence of an unconstitutional removal provision does not provide a basis to conclude that the agency head subject to the removal provision "lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1787. Similarly, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court held that an unconstitutional removal provision does not *per se* render the whole underlying act void. *Id.* at 2211; *see also Collins*, 141 S. Ct. at 1787 n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ."); *id.* at 1082 (Kagan, J., concurring in part and concurring in the judgment) ("[G]iven the majority's remedial analysis, I doubt the mass of [Social Security Administration] decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference . . . ."). Because Plaintiff has not shown that she experienced compensable harm based on the constitutional defect of Section 902(a)(3), nor has Plaintiff provided any evidence or even any specific factual allegations regarding any implied claim that she received reduced due process protections, Plaintiff has failed to show that she is entitled to a new hearing based on the existence of a constitutional defect in Section 902(a)(3).[6] *See Decker Coal Co.*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.").

The Commissioner further argues that "the absence of a nexus between the purported harm and challenged removal restrictions 'defeats the . . . argument for setting aside' agency action."

---

[6] Even if the Court's conclusion herein was not dispositive, other doctrines likely prevent Plaintiff's recovery. *See* Dkt. 26, at 8–13 (citing harmless error doctrine, the *de facto* officer doctrine, the rule of necessity, and broad prudential considerations).

ORDER
PAGE - 22

Dkt. 26, at 4 (citing *Collins*, 141 S. Ct. at 1787). The Commissioner argues that no such nexus exists in this case because the ALJ held an appointment that was ratified by then-Acting Commissioner Berryhill, who, the Commissioner asserts, "enjoyed no statutory tenure protection." *Id.* at 4–5 (citing 42 U.S.C. § 902(b)(4) and *Collins*, 141 S. Ct. at 1783). In *Collins*, the Supreme Court held that "[w]hen a statute does not limit the President's power to remove an agency head, we generally presume the officer serves at the President's pleasure." *Collins*, 141 S. Ct. at 1783. Here, Section 902(b)(4) provides that the presidentially appointed Deputy Commissioner or another office of the Government designated by the President shall serve as Acting Commissioner "during the absence of disability of the Commissioner. 42 U.S.C. § 902(b)(4). Neither provision governing the Deputy Commissioner or another presidentially designated Acting Commissioner contain removal restrictions. Plaintiff argues that that "[o]nce Commissioner Saul was appointed, Acting Commissioner Berryhill no longer had any delegated authority which she could re-delegate to this ALJ or to any ALJ." Dkt. 27, at 8. Plaintiff's contention, however, has no impact on this matter, wherein the ALJ who decided Plaintiff's claim was properly appointed by then-Acting Commissioner Berryhill while she was serving as Acting Commissioner. *See* Dkt. 26, at 4–5 n.2. Therefore, Plaintiff is not entitled to relief on the additional ground that the ALJ that adjudicated Plaintiff's claim was not subject to a constitutionally defective removal restriction. Further, to the extent that Plaintiff raises an appointment clause challenge, the Court concludes there is no appointments clause violation in this case, and the ALJ who issued the decision here was properly appointed.

For these reasons, the Court concludes that, although the parties do not dispute that Section 902(a)(3) is constitutionally defective, the defect is not grounds to reverse and remand the ALJ's decision in this matter.

1

## <u>**CONCLUSION**</u>

2

For the reasons set forth above, this matter is AFFIRMED.

3

DATED this 3rd day of January, 2022.

4

5

MARY ALICE THEILER
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER
PAGE - 24